IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 12, 2000 at Jackson

## STATE OF TENNESSEE v. MYRA L. SMITH

**Direct Appeal from the Criminal Court for Knox County**
**No. 62386B       Mary Beth Leibowitz, Judge**

---

**No. E1999-02196-CCA-R3-CD**
**December 6, 2000**

---

Myra L. Smith appeals the sentencing decision of the Knox County Criminal Court revoking her non-incarcerative sentence and ordering service of the sentence in the TDOC. In September 1998, Smith pled guilty to the class C felony of facilitating aggravated robbery and was placed under the supervision of the Knox County Community Alternative to Prison Program (CAPP). Four months later, a violation warrant issued. On appeal, Smith argues that the trial court acted arbitrarily in revoking her suspended sentence by failing to consider her extreme drug addiction, her history of mental illness, and her lack of intent to violate the conditions of probation. Finding that the trial court did not abuse its discretion, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Mark E. Stephens, District Public Defender, Julia Auer, at trial, and Paula R. Voss, on appeal, Assistant Public Defenders, Knoxville, Tennessee, for the appellant, Myra L. Smith.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Peter M. Coughlan, Assistant Attorney General, Randall E. Nichols, District Attorney General, and Robert L. Jolley, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Appellant, Myra L. Smith, appeals the July 16, 1999, sentencing decision of the Knox County Criminal Court ordering that "the defendant's Community Alternatives to Prison Program be and the same is hereby revoked and the judgment of this court on September 24, 1998 . . . is put into full force and effect." Before examination of the issues presented on appeal, we find it necessary to first examine the specific sentence imposed by the trial court.

On September 24, 1998, the Appellant, under the terms of a negotiated plea agreement, pled guilty to the offense of facilitating aggravated robbery, a class C felony. The judgment form entered by the trial court shows that, for this one conviction, the appellant received two sentences: (1) a five-year TDOC sentence and (2) a community based alternative sentence of nine years and two hundred nine days. The special conditions section of the uniform judgment form contains the notation:

> BY AGREEMENT, IT IS HEREBY ORDERED THAT THE DEFENDANT IS PLACED UNDER THE SUPERVISION OF THE COMMUNITY ALTERNATIVE TO PRISON PROGRAM FOR A PERIOD OF 9 YEARS, 209 DAYS, WHICH SHALL EXPIRE APRIL 21, 2008.

Thus, from the judgment form it is impossible to determine whether the sentence imposed was a TDOC sentence or a community corrections sentence. In this regard, we would note that, if the trial court intended the sentence to be a community corrections sentence, the sentence would be illegal because the maximum sentence which can be imposed for a range one offender convicted of a class C felony is six years. See TENN. CODE ANN. § 40-36-106(e)(2) ("the court shall possess the power to set the duration of the sentence for the offense committed at any period of time up to the maximum sentence within the appropriate sentence range"). See also TENN. CODE ANN. § 40-35-112(a)(3) (sentence range is 3 to 6 years). On the other hand, if the trial court intended the sentence to be a TDOC sentence, with the five years being suspended and the Appellant being placed on probation under CAPP's supervision for a period of nine years and two hundred nine days as a condition of probation, that sentence would be valid. See TENN. CODE ANN. § 40-36-106(f). See also TENN. CODE ANN. § 40-35-303(c) ("the court shall sentence the defendant to a specific sentence but shall suspend . . . all or part thereof and place the defendant on . . . probation . . . for a period of time not less than the minimum sentence allowed under the classification and up to and including the statutory maximum time for the class of the conviction offense"); TENN. CODE ANN. § 40-35-111(b)(3) (3 to 15 years).

The Appellant, in her brief, takes the position that the sentence imposed was a five-year TDOC sentence which was suspended with supervision being placed with the CAPP program. Certain portions of the record, however, do not support this position. For example, no probation warrant was ever filed nor is the term "probation" ever used in these proceedings. Instead, a "Violation of CAPP Program" warrant was issued which recites that, on September 24, 1998, the trial court:

> place[d] the [Appellant] on the community alternative to prison program (CAPP) for a term of eleven years in accordance with the provision of Title 40, Chapter 36 of the Tennessee Code Annotated (Community Corrections Act). [1]

---

[1] There is reference in the record to the fact that the Appellant was charged in a separate indictment with felony possession of cocaine and was sentenced on the same day for this offense and the offense of facilitating aggravated robbery. The record also suggests that the two convictions were ordered to be served consecutively and that both sentences were revoked at the revocation hearing. Neither the indictment nor the judgment form for the felony drug conviction are included in the record; nor does the Appellant appeal from the revocation of this sentence which equally affects her liberty. Additionally, we note that the transcript of the sentencing hearing of the instant case is not included
(continued...)

Following the revocation hearing, the trial court entered an order entitled "Revocation of Community Alternatives to Prison Program," which contained the following language:

> IT IS THEREFORE, ORDERED by the Court that the defendant's Community Alternatives to Prison Program be and the same is hereby revoked and the judgment of this court on September 24, 1998, [five (5) years in the Tennessee State Penitentiary for Women as a Standard Offender, Range I], is put into full force and effect.

Finally, it is noted that, at the revocation hearing, the trial court credited the Appellant with "successful CAPP time" during her participation in the program which contradicts a sentence of probation. See, e.g., State v. Bruce Cole, No. 02C01-9708-CC-00324 (Tenn. Crim. App. at Jackson, June 11, 1998) (probationer placed in community corrections program as condition of probation not entitled to sentence credit for time spent under community corrections supervision).

Despite the contradictions contained in the record regarding the precise nature of the sentence imposed, we conclude that whether the Appellant was on probation or serving a community corrections sentence is immaterial to the disposition of this appeal. The same principles applicable to a probation revocation are relevant to the revocation of community corrections. State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991). Nonetheless, we remind the sentencing court of the importance of clearly articulating the precise nature and manner of service of sentence in its imposition of punishment.

## Background

On January 27, 1999, a violation warrant was filed alleging that the Appellant had violated the conditions of the CAPP program by:

> Rule #1 Failing to obey the laws of the U.S. and the State . . . as well as any municipal ordinance.
>
> Rule #2 The offender shall not frequent bars or taverns nor possess or use alcohol or controlled substances.
>
> Rule #4 By fraternizing with persons who use, deal or traffic illegal substances or who has a criminal reputation.
>
> Rule #8 By failing to pay court costs.

---

[1](...continued)
in the record before this court.

Rule #10  By failing to pay community corrections monthly fees. [2]

A hearing was held on July 16, 1999.  At the hearing, Nancy Mlekodaj, the A & D coordinator with the CAPP program, testified that, on January 14, 1999, the Appellant submitted to a drug screen which revealed a positive result for cocaine.  The Appellant admitted to Ms. Mlekodaj that she had used cocaine and that the use of the substance was a violation of her non-incarcerative status.  On February 25, 1999, the Appellant again tested positive for the presence of cocaine.  After this second positive drug screen, the Appellant "absconded from the program."  On cross-examination, Ms. Mlekodaj stated that, prior to her absconding from the program, the Appellant had been participating in "groups" and otherwise performing well in the CAPP program.  She also testified that the Appellant was not paying the required costs and fees associated with the program, but that these monies were not the focus of the Appellant's rehabilitative program at that point.  It was conceded that the Appellant's main problem was her continued use of cocaine.  No further evidence was presented.

In a discussion of relevant considerations, the trial court articulated the following findings:

. . . We have to look really at Miss Smith's history and what she was doing on CAPP as well as the two . . . uses of the drug.

Miss Smith has had a long history of mental health and particularly of illegal drug use.  Miss Smith stated in her presentence report that she drank beer at seventeen and drank gallons in a day.  She first used cocaine at twenty.  And if I'm correct here Miss Smith is a lady of thirty-seven years of age approximately.  And Miss Smith has continued the use of cocaine and has in this court been convicted of possession of cocaine, a class C felony, with the intent to . . . sell it . . . .  And in addition she has also been convicted of facilitation to commit an aggravated robbery in a situation where an individual died, and that was a violent situation.

Miss Smith has had treatment in her past from Another Chance, Sisters of the Rainbow, Lakeshore Mental Health Institute, and I am sure that on each occasion she was afforded opportunities which - - and on CAPP and even twice on CAPP because the Court was willing to ROR her to let her go into some more intensive treatment with CAPP.

On each of those occasions I do not doubt Miss Smith's sincerity as she has been sincere in this report that she wanted to turn her life around and that she was trying to do so.  Unfortunately the situation is that I am a Criminal Court judge and I am not a social institute.

<hr>

[2]The warrant was amended by order of the court on March 2, 1999, and on June 29, 1999.

To allow Miss Smith, who tested positive for cocaine and was given a chance to turn it around following these convictions of such a severe nature, yet another chance because she tested positive again and then absconded both sends the wrong message to Miss Smith and would be, in this Court's opinion, irresponsible. I wish I had an inpatient in-house treatment program. I no longer do.

**Analysis**

The law concerning revocation of a suspended sentence is clear. Upon finding, by a preponderance of the evidence, that a defendant has violated the conditions of probation, a trial court retains the discretion to revoke the defendant from a suspended sentence and cause execution of the original judgment as it was entered. TENN. CODE ANN. §§ 40-35-310, -311(d) (1997 & Supp. 1998); TENN. CODE ANN. § 40-36-106(e)(4) (Supp. 1998).

This court reviews a revocation under an abuse of discretion standard. See State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997) (citing Harkins, 811 S.W.2d at 82; State v. Delp, 614 S.W.2d 395 (Tenn. Crim. App. 1980)). This means that the evidence need only show that the trial judge has exercised "conscientious and intelligent judgment in making the decision rather than acting arbitrarily." See State v. Leach, 914 S.W.2d 104, 107 (Tenn. Crim. App. 1995) (citing Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980), perm. to appeal denied, (Tenn. 1981)). Thus, in reviewing the trial court's action, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious judgment. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).

In the present case, the Appellant's flagrant abuse of her judicially granted liberty is indefensible. The primary goal of non-institutional punishment is to provide a period of grace in order to assist the rehabilitation of a penitent offender. See Burns v. United States, 287 U.S. 216, 220, 53 S. Ct. 154, 155 (1932). The record is undisputed that the Appellant continued to use cocaine and then absconded from the program. Her conduct demonstrates that she is unrepentant. Efforts to rehabilitate the Appellant have been rejected. In the case before us, the trial court was statutorily authorized to reinstate the Appellant's original five-year Department of Correction sentence. See TENN. CODE ANN. § 40-35-310; TENN. CODE ANN. § 40-36-106(e)(4). Based on the record before us, we cannot conclude that the trial court abused its discretion in revoking the Appellant from her non-incarcerative status and by ordering the Appellant to serve the terms of her original sentence. The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, JUDGE